**In re ABC BOOKS & SCHOOL SUPPLIES, Debtor.**

**Bankruptcy No. 3–88–00893.**

United States Bankruptcy Court, S.D. Ohio, W.D.

Oct. 10, 1990.

Christopher M. Hawk, Dayton, Ohio, for debtor.

Thomas R. Noland, Dayton, Ohio, trustee.

Charles F. Allbery, III, Dayton, Ohio, for creditor, Miller—Valentine Group.

## DECISION AND ORDER DENYING TRUSTEE'S OBJECTION TO CLAIMS OF MILLER–VALENTINE GROUP FOR ADMINISTRATIVE CLAIM

WILLIAM A. CLARK, Bankruptcy Judge.

Dated at Dayton, Ohio this 10th day of October, 1990.

This matter is before the court on the trustee's objection to Miller—Valentine Group's administrative claim of $4,608 (Claim No. 32). This contested matter arises in this bankruptcy case which was referred to this court by the district court under 28 U.S.C. § 1334 and the general order of reference entered in this district. The court finds that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B)—allowance or disallowance of claims.

Miller—Valentine Group filed a proof of claim for an administrative expense claim of $4,608 for rental of nonresidential real estate under the terms of a lease for the sixty days following the order of relief. The court has considered the memoranda of law from the creditor's attorney and the trustee's attorney, and the oral arguments at the hearing on September 18, 1990.

The trustee objects to the claim being treated as an administrative claim because the trustee did not assume the lease. The trustee contends the lease is deemed breached and should be treated as an unsecured claim from the date of the filing of the petition under 11 U.S.C. § 502(g). The trustee also contends that there is an inconsistency between 11 U.S.C. § 365(d)(3) and §§ 502(g), 365(g)(1) and 365(d)(4). Section 365(d)(3) provides that the chapter 7 trustee is "to perform all the obligations of a lease" for the first sixty days after the order for relief, while Bankruptcy Code sections 502(g) and 365(g)(1) and 365(d)(4) make the claim a prepetition, unsecured claim or an administrative claim subject to reasonable allowance based on benefit to the estate.

The creditor contends that the claim for rent of a nonresidential real property lease is an administrative claim governed by 11 U.S.C. §§ 365(b)(1) and 365(d)(3) which entitles the landlord to the contract rent during the sixty day period following the date of the order of relief.

The debtor operated a retail book and school supply store on leased premises for $2,304 per month, including common area expenses, taxes and insurance under a written lease agreement until debtor requested bankruptcy relief on March 22, 1988. The trustee conducted a sale of all inventory in the store on June 1, 1988 which netted $3,447.93 for the estate. He then surrendered the keys to the landlord.

The text of 3 *Collier on Bankruptcy,* paragraph 503.04[1][a] at 503–20 (15th ed. 1986) states:

> The actual and necessary expenditures of the trustee for the costs of operating a business, for storage of property, for *rent,* for taxes and other costs incidental to protection and conservation, are contemplated within the phrase "the actual, necessary costs and expenses of preserving the estate" (emphasis added).

To the extent that the premises are used for the preservation of estate assets a rent claim gives rise to administrative expense treatment.

Prior to the 1984 amendments to the Bankruptcy Code, a claim for post-petition rent was subject to the estate's liability for only the reasonable value of the use and occupancy of the premises. The Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub.L. No. 98–353, 98 Stat. 333 (1984) ("BAFJA") added to Section 365 subsection (d)(3) and (4) which read as follows:

> (3) The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for

relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60–day period. This subsection shall not be deemed to affect the trustee's obligations under the provisions of subsection (b) or (f) of this section. Acceptance of any such performance does not constitute waiver or relinquishment of the lessor's rights under such lease or under this title.

(4) Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

Congress treated unexpired nonresidential real property leases in the same manner under each chapter of the Bankruptcy Code. The legislative history demonstrates that Congress intended to ease the undue burden upon nonresidential lessors caused by the interruption in the flow of their rental income during the period the trustee considers whether to assume or reject a lease:

In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position. In addition, the other tenants often must increase their common area charge payments to compensate for the trustee's failure to make the required payments for the debtor. 130 Cong.Rec. S. 8895 (daily ed. June 29, 1984) (Remarks of Senator Hatch)

To lessen the landlord's burden, Congress amended Section 365 by adding subsection (d)(3) and (4).

Section 365(d)(3) and (d)(4) had three significant consequences for nonresidential lessors. First, the trustee is limited to a sixty day period, unless the period is extended by the court, in which to decide whether to assume or reject the lease. Second, the rental falling due during the sixty day period is an allowable administrative expense without the necessity of a notice and hearing. *See In re Dieckhaus Stationers of King of Prussia, Inc.*, 73 B.R. 969 (Bankr.E.D.Pa.1987); *In re Coastal Dry Dock and Repair Corp.*, 62 B.R. 879 (Bankr.E.D.N.Y.1986); *Matter of Longua*, 58 B.R. 503 (Bankr.W.D.Wisc.1986). Third, the amount of the administrative expense claim arising in the sixty day period is governed exclusively by the terms of the lease. *Matter of Longua, Id.* at 505; *In re Fisher and Fisher, Inc.*, 51 B.R. 680 (Bankr.S.D.Ohio 1985).

In this case the question of whether the rental is entitled to a super-priority is not necessary to the determination that the agreed lease amount of the rent is due as an administrative expense claim. The estate in this case has sufficient funds to pay all claims for administrative claims filed herein. The question remains whether such rent is an administrative claim at all.

The trustee has raised several practical problems with administration of a chapter 7 estate under the requisites resulting from application of section 365(d)(3) and (d)(4). The trustee contends accurately that a trustee receives his working documents more than two weeks after the filing of the petition in chapter 7 cases and those documents almost never contain the lease for the trustee's review. The chapter 7 trustee contends he must liquidate the assets and can not comply with all of the terms of the Miller—Valentine lease, which requires hours of opening and prohibits a "going out of business sale" on the premises so

the trustee has no choice but to reject the lease.

The trustee acted promptly to liquidate assets by hiring an auctioneer and setting an auction sale date with the consent of the landlord. For these practical reasons, the trustee contends Congress could not have considered the overall effect upon the administration of chapter 7 bankruptcy cases in enacting Section 365(d)(3) and (d)(4).

The practical problems raised by the trustee are a concern for which the Congressional mandate must be examined. Congress in the legislative history and in the final enactment of Section 365(d)(3) and (d)(4) has shown greater concern for easing the burden on landlords than for protecting assets for the benefit of all creditors. Congress made it clear that the rental for the sixty day period is governed exclusively by the terms of the lease. One court construing the sections stated:

> Any necessity for showing the reasonableness of the rent or any of the other factors considered under Section 503(b) has been completely abrogated by Section 365(d)(3). *Matter of Longua*, 58 B.R. at 505.

In *In re Fisher and Fisher, Inc., supra*, 51 B.R. at 682–683, Judge Perlman of this district held: "We are precluded from questioning the reasonableness of the monthly rental under the Rental Agreement for those two months because of an amendment to the bankruptcy statute ... 11 U.S.C. § 365(d)(3)." Another colleague in the Sixth Circuit agrees with Judge Perlman's decision in *In re Fisher and Fisher, Inc.* Although the issue arose in a chapter 11 case, Judge Sellers stated in the case of *In re Cardinal Industries, Inc.*, 109 B.R. 738 (Bankr.S.D.Ohio 1989), that Section 365(d)(3) clearly indicates that rents which come due during the first sixty days of a chapter 11 case are allowable as administrative expense without the necessity for the prior notice and hearing otherwise required by 11 U.S.C. § 503(b)(1). That court went further to order that the claim for rents accrued to the time of the rejection of the lease could and should have been paid as an administrative expense without notice to other parties or other opportunity for a hearing. This reasoning captures the intent of Congress on the issue and we agree with that interpretation of section 365(a)(3).

■■■ Other authority contrary to the above-stated cases and interpretation stand for the proposition that the amount allowed for the claim must be shown to be reasonable and that the reasonableness requirement in 11 U.S.C. § 503(b)(1)(A) has not been completely abrogated by 11 U.S.C. § 365(d)(3). *Great Western Savings Bank v. Orvco, Inc. (In re Orvco, Inc.)*, 95 B.R. 724 (Bankr. 9th Cir.1989).

In the instant case, this court is not compelled to determine the issue of the super-priority status of the claim. This court concludes that the intent of Congress is clear in requiring that the landlord is entitled to an administrative claim for the lease amount of the rent for the sixty day period. However, as an administrative claim such claim must stand on an equal footing with all other administrative claims filed in the case.

Based upon the statute, the cases reported and this court's reasoning, the landlord creditor is entitled to the lease or contract rent for the sixty day period in the amount of $4,608.

IT IS SO ORDERED.