In re INTERNATIONAL
VENTURES, INC.

Bankruptcy No. 95–43854 S.

United States Bankruptcy Court,
E.D. Arkansas,
Little Rock Division.

Nov. 25, 1997.

Stan Smith, Little Rock, AR, for Debtor.

W. Michael Reif, Little Rock, AR, for A.W.P.M., L.L.C.

## ORDER SUSTAINING, IN PART, AND OVERRULING, IN PART, OBJECTION TO ADMINISTRATIVE CLAIM

MARY D. SCOTT, Bankruptcy Judge.

This cause is before the Court upon the Application by A.W.P.M., L.L.C. for Administrative Expenses in the amount of $45,-266.19 and the Objection by the debtor to the application. Trial of this matter was heard on September 25, 1997, and taken under submission upon the completion of the post-trial briefing schedule. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a), 1334. Moreover, this Court concludes that this is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2) as exemplified by 28 U.S .C. § 157(b)(2)(B).

On December 18, 1997, when the debtor International Ventures, Inc. ("International Ventures") filed its bankruptcy case, it had a restaurant lease in force in Manhattan, Kansas with A.W.P.M., L.L.C. ("lessor"). Two months prior to the filing of the bankruptcy, the debtor ceased operating its Bonanza Restaurant at that location, but had not removed any of its equipment from the premises. At the time the debtor ceased operations, the parties agreed that the equipment would remain on the premises. In this manner, the debtor was not required to expend funds to dismantle, move and store the equipment, and could effectively show the equipment should a buyer be found. In addition, with equipment in place the lessor could more effectively attract an alternative restaurant tenant. The debtor had no equity in the equipment.

The debtor did not assume or reject the lease within the first sixty days of the bankruptcy case such that it was rejected as a matter of law. 11 U.S.C. § 365(d)(4). In late January or early February 1996, International Ventures indicated to the lessor that it wished to sell the equipment in the near future. An auctioneer was hired. After discussions with the lessor, however, the auction was delayed. On June 11, 1996, the lessor notified International Ventures that it had leased the space and demanded removal of the equipment within one week. International Ventures, with Court approval, immediately auctioned the equipment.

▮ Inasmuch as International Ventures did not pay any of its rental obligations under this lease during the bankruptcy,[1] the lessor filed an application for administrative expenses seeking compensation pursuant to the lease from the date of the petition through June 11, 1996, the date International Ventures vacated the premises. The debtor objects to the application on several grounds. First, the parties dispute whether a claimant must demonstrate a benefit to the estate to assert a claim for an administrative expense for rent in the sixty-day period prior to rejection of the lease. Second, the parties dispute whether there was a benefit to the estate entitling the lessor to an administrative claim for the period following rejection of the lease. International Ventures also argues that the lessor is equitably estopped from asserting its claim because, through its words and actions, the lessor caused International Ventures to refrain from removing its equipment from the premises. Finally, International Ventures argues that, by failing to seek any of its state law remedies, including eviction of the debtor from the premises, the lessor has waived its right to assert an administrative claim in this bankruptcy case.

---

1. In fact, the debtor ceased paying on the lease obligations prior to the filing of the bankruptcy. For this period of time prior to the filing of the case, the lessor holds a general unsecured claim for the rent. *See generally Matter of JAS Enterprises, Inc.,* 180 B.R. 210, 215, 217 (Bankr. D.Neb.1995), *appeal decided,* 113 F.3d 1238 (8th Cir.1997).

### The Pre–Rejection Period

■ International Ventures asserts that Bankruptcy Code section 503(b)(1)(A) limits the lessor's claim, even within the pre-rejection period, to those actual and necessary costs of preserving the estate. The lessor asserts that, within the first sixty days of the bankruptcy case, it is entitled, without any showing of benefit to the estate, administrative expense treatment. Entitlement to an administrative claim is governed by section 503 of the Bankruptcy Code, and, in this context, is limited to those "actual, necessary costs and expenses of preserving the estate." 11 U.S.C. § 503(b)(1)(A). However, the Bankruptcy Code also imposes a duty upon the trustee or debtor-in-possession to perform all obligations of the debtor "arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, *notwithstanding section 503(b)(1) of this title.*" 11 U.S.C. § 365(d)(3) (emphasis added). In the instant case, upon the debtor's failure to assume or reject the lease within sixty-days of the filing of the bankruptcy petition, the lease was deemed rejected by operation of law, 11 U.S.C. § 365(d)(4).

■ Under the Bankruptcy Code a lessor is entitled to allowance of an administrative claim, without regard to whether there is a benefit to the estate, for the full amount of the debtor's rental obligation for the period following the order for relief but prior to rejection of the lease pursuant to 11 U.S.C. § 365(d)(3). In making this determination, the Court follows the majority of cases deciding this issue. *See, e.g., Towers v. Chickering & Gregory (In re Pacific–Atlantic Trading Co.),* 27 F.3d 401 (9th Cir.1994); *Augusta Mall Partnership v. Twigland Fashions, Inc. (In re Twigland Fashions, Inc.),* 198 B.R. 199 (W.D.Tex.1996); *In re Liberty Outdoors, Inc.,* 205 B.R. 414 (Bankr.E.D.Mo.1997); *see Thinking Machines Corporation v. Mellon Financial Services Corporation (In re Thinking Machines Corporation ),* 67 F.3d 1021, 1024 (1st Cir.1995). Although it is true that section 365(d)(3) does not expressly bestow administrative claim status upon the rental obligation, that section does require the debtor-in-possession to perform *all* obligations under the lease, presumably including payment of the rent. Moreover, to impose the section 503(b)(1) requirement that the claimant demonstrate a benefit to the estate renders the language "notwithstanding section 503(b)(1)" meaningless. Accordingly, the lessor is entitled to the full amount of its administrative claim, $13,395.70 for the period December 18, 1995, through February 16, 1996.

### The Post–Rejection Period

■ In the post-rejection period, however, an administrative claimant must demonstrate a tangible benefit to the estate. 11 U.S.C. § 503(b)(1). The evidence is uncontroverted that International Ventures utilized the leased space only for storage such that the only benefit to the estate, and therefore recoverable as an administrative expense, was for storage of the equipment and related costs. *In re K–Fabricators, Inc.,* 135 B.R. 654, 659 (Bankr.W.D.Wash.1992). The specific benefits to the estate include storage as well as the savings associated with not having to disconnect and move the equipment. Although there is a presumption that the contract rate is the fair and reasonable amount of the claim, that presumption may be rebutted by evidence of the actual benefit derived from the use of the premises. *See id.* However, since neither party offered any evidence as to the costs of dismantling and moving the equipment, the Court does not allow for these expenses. Although the burden was upon the debtor to rebut the presumption that the value of the benefit was the contract rate, the ultimate burden is upon the claimant to demonstrate the value of the benefit to the estate. *Cf. General American Transportation Corp. v. Martin (In re Mid Region Petroleum, Inc.),* 1 F.3d 1130, 1132 (10th Cir.1993)(burden of demonstrating existence of a benefit to the estate upon claimant).

International Ventures offered evidence that similar storage costs in a similar market previously cost the debtor $410.00 per month. Accordingly, the debtor asserts that the lessor is entitled only to approximately $1,640.00. The debtor admitted that there would be some removal costs but does not

remember how much such costs had been in other moves. The lessor asserts that storage costs should be measured to a comparable premises, and offers the figure of $20,096.57 as a reasonable storage cost. The Court finds the figure of $410.00 per month to be the more reasonable figure and thus awards that amount as an administrative expense for the post-rejection period of time.

### Equitable Estoppel

■ International Ventures argues that the lessor should be estopped from claiming any administrative expense because the debtor only remained in the premises due to statements and actions of the lessor. In order to assert estoppel against the lessor, International Ventures must demonstrate:

(1) The lessor knew all of the facts;

(2) The lessor intended that its conduct would be acted on, or that it acted in a manner which caused International Ventures to believe lessor so intended;

(3) International Ventures was ignorant of the true facts; and

(4) International Ventures relied on the conduct or acts of the lessor and was injured by that reliance.

See South Central Petroleum, Inc. v. Long Brothers Oil Company, 974 F.2d 1015, 1018 (8th Cir.1992); Philadelphia Indemnity Insurance Company v. Carco Rentals, Inc., 923 F.Supp. 1143, 1156 (W.D.Ark.1996); Arkansas Department of Human Services v. Estate of Lewis, 325 Ark. 20, 922 S.W.2d 712, 713 (1996). Estoppel precludes a party from asserting a right based upon its conduct in misleading another, James Talcott, Inc. v. Associates Discount Corporation, 302 F.2d 443, 446 (8th Cir.1962), and is generally applied where there is an element of misrepresentation, deception, blame or even fraud in a party's conduct, Worthen Bank & Trust Co. v. Franklin Life Insurance Co., 260 F.Supp. 1, 4 (E.D.Ark.1966), aff'd, 370 F.2d 97 (8th Cir.1966); see Nelson v. Chicago Mill & Lumber Corporation, 76 F.2d 17, 21 (8th Cir.1935).

■ The Court believes that there was indeed a mutual agreement that the debtor could remain on the property. This fact, however, does not rise to the level of estopping the lessor from entitlement to its administrative claim. There is no evidence before the Court that the lessor acted with the requisite wilfulness or negligence in its conduct. Certainly, there was no act or statement which rises to any level of deception or blame as required by Arkansas law. Further, the debtor was cognizant of all of the relevant facts and circumstances. It knew its obligations under the lease, under the Bankruptcy Code, and that it could be required to vacate the premises at any time. The debtor received a substantial benefit by remaining on the premises such that estoppel is inappropriate. The Court believes that the decisions by the debtor to remain on the premises, and by the lessor to permit the debtor to remain on the premises, were mutual which excludes the application of estoppel.

■ Similarly, the fact that the lessor took no action to evict the debtor from the premises, or otherwise enforce state law remedies, does not preclude the lessor from asserting an administrative claim. Towers v. Chickering & Gregory (In re Pacific–Atlantic Trading Co.), 27 F.3d 401 (9th Cir.1994); Matter of JAS Enterprises, Inc., 180 B.R. 210, 216 (Bankr.D.Neb.1995), appeal decided, 113 F.3d 1238 (8th Cir.1997). Cf. South Central Petroleum, Inc. v. Long Brothers Oil Company, 974 F.2d 1015, 1018 (8th Cir.1992). That contention is without merit.

### Conclusion

The lessor is entitled to allowance of an administrative claim for the full amount of the rent under the lease for the first sixty days of the pendency of the bankruptcy case. The lessor is entitled to allowance of an administrative claim in the amount of $410.00 for four months. Accordingly, it is

**ORDERED** that the Application by A.W.P.M., L.L.C. for Administrative Expenses in the amount of $45,266.19 is allowed in part and denied in part. The Objection by the debtor to the application is sustained in part and overruled in part. A.W.P.M.,

L.L.C. administrative claim is allowed in the amount of $15,035.70.

**IT IS SO ORDERED.**