**In re VETZEL MOVING &
STORAGE, INC., Debtor.**

**Bankruptcy No. 84-190-8P7.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Feb. 5, 1988.

Jack Weech, Jr., Lakeland, Fla., trustee.

Michael A. Linsky, Tampa, Fla., for Marine Industrial Supply.

R.C. Fernon, Jr., Tampa, Fla., for debtors.

## ORDER ON MOTION FOR PAYMENT OF ADMINISTRATIVE EXPENSE

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 7 liquidation case originally commenced by a voluntary petition for relief filed by Vetzel Moving & Storage, Inc. ("Vetzel") under Chapter 11 of the Bankruptcy Code. The matter under consideration is a claim for payment of an administrative expense filed by Marine Industrial Supply, Inc. ("Marine") who claims that it is entitled to be paid for the use and occupancy of its property by the Debtor as a cost of administration pursuant to § 503 of the Bankruptcy Code and accorded first priority pursuant to § 507(a)(1). The claim was originally presented in the form of a proof of claim filed by Marine on May 20, 1986 in the amount of $66,040 which, according to Marine, represented a daily charge of $620 for the storage of numerous trucks and vehicles owned by Vetzel. The Motion seeks an allowance for storage at the rates "agreed upon" since February, 1986. The original Motion does not indicate the termination date of the period for which an allowance is sought but it is fair to assume that it was intended to extend through the

date of the filing of the Motion which was October 28, 1986.

The amended Motion under consideration, filed October 28, 1986, asserts a right of Marine to entitlement on the alleged agreements Marine arrived at with Mr. Vetzel, the president of the Debtor, according to which Marine agreed to permit Vetzel to store the trucks for one (1) month, from around January 18, 1986 through February 18, 1986, for a total storage charge of $700. Marine further alleges in the amended Motion that Vetzel agreed to repair the land of Marine allegedly injured by the trucks and vehicles which were stored on the property and compensate Marine by payment of $1,400 with the proviso, however, that the vehicles may remain on the property for sixty (60) more days without further charge. Marine also alleges that the trustee, appointed after the Chapter 11 case was converted, inspected the vehicles and agreed to their storage under Marine's agreement with Vetzel.

Unfortunately, the facts presented at the final evidentiary hearing have not even a remote resemblance to the facts alleged in the original or in the amended Motion which, as established at the final evidentiary hearing, are as follows.

Sometime in January 1986, Vetzel, a Chapter 11 debtor through its president, requested Marine to permit Vetzel to temporarily store certain trucks and vehicles on Marine's property. Marine, through its president, agreed, and consented to storage for one (1) month for a charge of $700. It appears that after the expiration of the first month, which allegedly ended on February 18, Marine agreed to permit the trucks and vehicles to remain on the property for sixty (60) days longer and Vetzel supposedly agreed to a payment of $1,400. It is without dispute that Vetzel paid the first $700 and also paid all but $50 of the $1,400 agreed upon. It appears that the property located in Pasco County is a cow pasture 20 acres in size which has not been used for any storage purpose in the past. Part of the property has been used only to house some horses and some other animals and a small airstrip to accommodate small planes. There is nothing in this record to establish that this property ever produced any income to Marine and Marine never was and still is not in the storage business.

It appears that in September the trustee of the estate visited the property for the purpose of removing from the property the 23 semi tractors, 32 trailers, two (2) large vans, one (1) small van, two (2) passenger vehicles and one (1) station wagon stored on the property. The president of Marine demanded payment for storage, and since the trustee declined to comply, the president of Marine prohibited the trustee from removing the vehicles, and they were not removed until November, 1986. The eventual removal of the vehicles was accomplished by Commercial Fleet, Inc., a firm located in Clearwater, Florida engaged in the business of repairing, maintaining and storing tractors and trailers similar to those removed from the Marine property. Commercial agreed to store the vehicles for $1,500 per month which appears to be a compatible rate charged in the area for storage of similar vehicles by others in the storage business. While it is intimated that the reason Commercial only charged $1,500 was because the deal included additional payment for removal and repair of the vehicles, there is also evidence that the agreements to repair and put the vehicles in operating condition were not arrived at until after the vehicles were removed and stored on the property of Commercial.

These are basically the underlying facts established at the final evidentiary hearing based on which Marine contends that it is entitled to an allowance as a cost of administration in the amount of $130,200 to be accorded first priority under § 507(a)(1) of the Bankruptcy Code and to be paid ahead of any and all claims as cost of administration pursuant to § 503 of the Bankruptcy Code.

■ The right of an owner of property to be compensated by an estate and to be paid as a proper cost of administration item must be based on the reasonable value of the use and occupancy of the premises, which use was necessary and beneficial to the estate. *In re Subscription Television*

*of Greater Atlanta,* 789 F.2d 1530 (11th Cir.1986). Any agreement between the property owner and the debtor either prior to the commencement of the case or, as in this instance, subsequent to the conversion of the case but prior to the conversion from a Chapter 11 to a Chapter 7 case presumptively represents the reasonable value of use and occupancy of the premises. *In the Matter of Braniff Airways, Inc.,* 783 F.2d 1283 (5th Cir.1986).

It is clear from this record that the only agreement to pay storage was the agreement by Vetzel and the president of Marine for the purpose of storing the vehicles on the property of Marine at the rate of $700 per month. Thus, theoretically, the amount is presumed to represent the reasonable value of use and occupancy of the property owned by Marine. However, the evidence in this record also shows that in this area, the reasonable value of storage of similar vehicles is $1,500 per month, and this amount is uncontradicted. As noted earlier, the land on which the vehicles were stored is vacant pasture land which never produced any income to Marine and was never used by Marine for storing anything. The property consists of 20 acres and out of the total only five (5) acres were used for actual storage of the vehicles. There is nothing in this record to show that the storage of these vehicles prevented Marine from using the balance of the property for any purpose. Taking these factors into consideration, together with the entire record, it is the considered opinion of this Court that the reasonable value for the use and occupancy of the property should not exceed $1,500 per month.

■ It should be noted that it is intimated, but not plead, that the rate of $620 per day includes not only the reasonable use of the property but also charges for services rendered by the president of Marine to Vetzel for two (2) days when his equipment was used to move the trucks and trailers off the property. However, this Court is satisfied that while there might be a basis for these charges if the trustee had filed an application to employ the president of Marine to perform these services, the trustee did not file such an application. There is no question that these charges cannot be imposed on the estate when their performance was never authorized.

■ This leaves for consideration the question of whether Marine should be entitled to receive this amount for seven months, i.e. from April to November, 1986, or only from April through September. The evidence is uncontradicted that the trustee was willing and wanted to remove the vehicles in September but was prevented by Marine from doing so because of the unwillingness of the trustee to pay any amount to Marine for storage. Clearly Marine should not be entitled to receive any compensation for storage after that date. In sum, while Marine's amended Motion for Allowance of Cost of Administration should be granted, the same is limited to $7,500 to be accorded first priority and to be paid as a cost of administration together with all other allowed costs of administration upon conclusion of the administration of the estate.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that the Amended Motion for Allowance and Payment of Administrative Expenses be, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DECREED that Marine Industrial Supply, Inc., be, and the same hereby is, allowed the sum of $7,500 as a cost of administration to be accorded first priority and to be paid together with all other allowed costs of administration upon conclusion of the administration of the estate.