**In re Phillip James SCHNITZ and Gina Marie Schnitz, Debtors.**

**No. 02–46146–JWV.**

United States Bankruptcy Court, W.D. Missouri.

April 23, 2003.

Cynthia F. Grimes, Lenexa, KS, for debtor.

Richard Fink, Kansas City, MO, trustee.

### MEMORANDUM OPINION AND ORDER

JERRY W. VENTERS, Bankruptcy Judge.

When Phillip James Schnitz and Gina Marie Schnitz ("Debtors") filed this Chapter 13 case on November 5, 2002, they operated a business in premises rented from Great Plains Real Estate Developments, L.L.C. ("Great Plains"). After the bankruptcy was filed, the parties agreed that the Debtors' lease would be terminated and rejected effective on December 15, 2002, and that the Debtors had surrendered the premises to Great Plains on that date. Great Plains has now filed a Motion for Immediate Payment of Administrative Rents ("Motion")(Document # 44), seeking immediate payment of $3,231.40 for the post-petition, pre-rejection rents provided for in the Debtors' lease. The Debtors have objected to the Motion.

The Court held a hearing on the Motion on March 26, 2003. At that time, counsel for the parties stipulated that the facts were as pleaded by Great Plains in the Motion, and that there remains only a legal issue: Whether the post-petition, pre-rejection rents constitute an allowable administrative expense claim on which Great Plains is entitled to immediate or priority payment, or whether Great Plains' claim is merely a general unsecured pre-petition claim that should be paid along with all other general unsecured claims under the terms of the Debtors' Chapter 13 Plan.

For the reasons set out below, the Court finds that Great Plains is entitled to an administrative claim of $3,231.40 for the post-petition, pre-rejection rents, and that that claim should be paid pro rata with other administrative claims under the Debtors' Chapter 13 Plan, rather than being paid immediately, as requested by Great Plains.[1]

### FACTS

The lease entered into by the parties called for the Debtors to pay rent of

---

**1.** This Memorandum Opinion and Order constitutes the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, Fed.R.Bankr.P., made applicable to

$1,941.67 a month in November and December 2002, plus common area maintenance charges of $451.00 a month. The Debtors occupied the premises post-petition for 26 days in November and 15 days in December before the rejection was effective. Therefore, Great Plains makes a claim for a total of $3,231.40, representing the post-petition, pre-rejection rent and common area maintenance charges for the 41 days the Debtors occupied the premises after filing their Chapter 13 bankruptcy. The Debtors did not adduce any evidence to show that the rents and other charges called for in the lease were unreasonable.

## DISCUSSION

■ Great Plains asserts its administrative claim under 11 U.S.C. § 365(d)(3), which provides in pertinent part:

The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, *notwithstanding section 503(b)(1) of this title*. The court may extend, for cause, the time for performance of any such obligation that arises within 60 days after the date of the order for relief, but the time for performance shall not be extended beyond such 60–day period...(emphasis added)

Section 503(b)(1)(A), in turn, provides:

(b) After notice and a hearing, there shall be allowed administrative expenses, other than claims allowed under section 502(f) of this title, including—

these proceedings by Bankruptcy Rule 9014, Fed.R.Bankr.P. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (B).

(1)(A) the actual, necessary costs and expenses of preserving the estate, including wages, salaries, or commissions for services rendered after the commencement of the case;...

A review of the case law in this area reflects a division among the bankruptcy courts over whether a lessor of nonresidential real property is entitled to an administrative claim under § 365(d)(3) for those lease obligations arising immediately after the filing of the bankruptcy case, without making a showing that the lease obligations are an "actual and necessary" expense of preserving the estate (i.e., "notwithstanding section 503(b)(1) of this title"). Some courts have held that, despite the apparently unambiguous language of § 365(d)(3), the lessor must nevertheless demonstrate that the lease has benefitted the bankruptcy estate.[2] However, the great majority of cases addressing the issue—with which this Court agrees—have held that a lessor is entitled to an administrative expense for rent due under the lease, notwithstanding the requirement of § 503(b)(1)(A) that, to be accorded administrative expense status, expenses must be actual and necessary costs of preserving the bankruptcy estate. *In re Pyxsys Corporation*, 288 B.R. 309, 314 (Bankr. D.Mass.2003); *In re Worths Stores Corp.*, 135 B.R. 112, 115 (Bankr.E.D.Mo.1991).

Those courts standing in the majority generally have found that § 365(d)(3) contains an unambiguous statement of Congressional intent that the lessors of nonresidential property should receive the rent provided for in the lease until the lease is rejected. *Worths Stores*, 135 B.R. at 114; *In re Laurence R. Smith, Inc.*, 127 B.R. 715, 716 (Bankr.D.Conn.1991). In *In*

2. For a listing of the cases in the majority and minority camps, see *In re Brewer*, 233 B.R. 825, 829 (Bankr.E.D.Ark.1999).

*re Coastal Dry Dock & Repair Corp.*, 62 B.R. 879 (Bankr.E.D.N.Y.1986), the court stated:

In unmistakable terms, Section 365(d)(3)...requires trustees or debtors in possession to timely perform the debtor's lease obligations, including payment of all rents reserved under the lease until the lease is assumed or rejected...This obligation is made expressly independent of the normal standards for administrative expense claims under § 503(b)(1) and constitutes an administrative expense payable without notice and a hearing. (citations omitted)

*Coastal Dry Dock*, 62 B.R. at 882–83.

Additionally, the legislative history for § 365(d)(3) supports the majority's position. In 1984, Congress added § 365(d)(3) to ease the burden on nonresidential lessors caused by the loss of rental income during the post-filing, pre-rejection period by creating an administrative expense claim governed exclusively by the terms of the lease between the parties. Before that amendment was made, a landlord's claim for post-petition rent was limited to the estate's liability for the reasonable value of the use and occupancy of the premises. *Worths Stores*, 135 B.R. at 114–15; *In re ABC Books & School Supplies*, 121 B.R. 329, 330 (Bankr.S.D.Ohio 1990).

The legislative history states:

In this situation, the landlord is forced to provide current services—the use of its property, utilities, security, and other services—without current payment. No other creditor is put in this position...The bill would lessen these problems by requiring the trustee to perform all the obligations of the debtor under a lease of nonresidential real property at the time required in the lease. This timely performance requirement will insure that debtor-tenants pay their rent, common area, and other charges on time

pending the trustee's assumption or rejection of the lease. (*In re Longua*, 58 B.R. 503, 505 (Bankr.W.D.Wis.1986), *quoting* 130 Cong. Rec. S8894–95 (daily ed. June 29, 1984) (remarks of Senator Hatch)).·

*See In re Brewer*, 233 B.R. 825, 829 (Bankr.E.D.Ark.1999) ("The purpose of section 365(d)(3) is to ameliorate the financial burden on lessors of nonresidential real property while the trustee decides whether to assume or reject the lease.").

Finally, as Judge Schermer noted in *Worths Stores*, policy reasons support the majority's position as well. To hold otherwise would be to give the debtor an incentive during the first 60 days of the case to not comply with the prompt payment mandate of § 365(d)(3) if there is a chance the lease will be rejected and is at an above-market rental rate or if the debtor has not fully occupied the premises. *Worths Stores*, 135 B.R. at 115, quoting *In re Washington Bancorporation*, 125 B.R. 328, 329 (Bankr.D.D.C.1991).

This Court finds persuasive the plain language of the statute, the legislative history, and the reasoning of the majority of the courts considering this issue, and will align itself with the majority view. Accordingly, we hold that Great Plains is entitled to an administrative expense claim of $3,231.40 pursuant to § 365(d)(3), without the necessity of meeting the "benefits test" of § 503(b)(1)(A).

The question then becomes: How and when must the claim be paid?

■ Here again, it appears that the courts are divided into a majority camp and a minority camp. Those courts holding the minority view have found that the statute's command that the trustee "shall *timely* perform" the debtor's obligation to pay rent means that the lessor's claim must be accorded superpriority status,

whereas those courts in the majority have found no explicit authority for according the administrative expense claim superpriority status. *See Pyxsys Corporation,* 288 B.R. at 314–15. Further examination of these differing views is unnecessary here, because most of those cases are either Chapter 11 or 7 cases, and the case now before the Court is a Chapter 13 case.

 Under the remedial provisions of Chapter 13, a debtor is to be accorded an opportunity to pay his or her debts over a period of time, ranging from a minimum of 36 months to a maximum of 60 months. 11 U.S.C. § 1322(d). To be confirmed, a Chapter 13 plan must provide for full payment, in deferred cash payments, of all claims entitled to priority under § 507 of the Bankruptcy Code, unless the holder of a particular claim agrees to a different treatment. 11 U.S.C. § 1322(a)(2). Administrative expense claims are entitled to first priority in payment under § 507. 11 U.S.C. § 507(a)(1). There is nothing in Chapter 13 that provides for the *immediate* payment of any claim or class of claims, and the concept of *superpriority* claims is foreign to Chapter 13 proceedings. Rather, the claims in a Chapter 13 case are to be paid from the *"future* earnings or other *future* income of the debtor . . . as is necessary for the execution of the plan." (emphasis added) 11 U.S.C. § 1322(a)(1). Because the claims in Chapter 13 are to be paid from the debtor's *future* income, it necessarily follows that those claims are not to be paid immediately, but instead are to be paid over time in the order of priority established by § 507. Moreover, as a practical matter, even administrative expense claims cannot be paid *immediately* in Chapter 13 cases because there is no money with which to pay those claims at the outset of the case. No assets are being liquidated with which to pay such claims. Rather, the debtor must pay

to the trustee, over time, the funds required to fund and carry out the provisions of the Chapter 13 plan.

In this case, the debtors have filed a Chapter 13 plan (a "Base Plan") proposing to pay to the trustee $430.00 a month for 52 months. Inasmuch as Great Plains' administrative expense claim must be paid in full, with interest, and inasmuch as the Plan did not contemplate the payment of this first priority, administrative claim, it could well be that the Debtors' Plan does not provide sufficient funding to pay Great Plains' claim and also pay the other debts presently contemplated by the Debtors. The Debtors should be given an opportunity to amend their Plan so as to provide for payment of Great Plains' administrative expense claim, as required by the Bankruptcy Code. That claim may and should be paid pro rata with other administrative expense claims, in view of the absence of any provisions for the superpriority payment of any claims in Chapter 13.

Therefore, it is

**ORDERED** that Great Plains Real Estate Developments, L.L.C.'s Motion for Immediate Payment of Administrative Rents (Document # 44) be and is hereby sustained, to the extent that Great Plains is granted an administrative expense claim in the amount of $3,231.40, and be and is hereby denied as to the request for immediate payment of that claim. It is

**FURTHER ORDERED** that the Debtors be and are hereby granted 30 days in which to file an amended Plan providing for the payment in full, with interest, of the administrative expense claim of Great Plains, as required by 11 U.S.C. § 507(a)(1) and 11 U.S.C. § 1322(a)(2).